F filing

1  JOHN L. BURRIS, Esq./ State Bar #69888
2  BENJAMIN NISENBAUM, Esq./State Bar #222173
   LAW OFFICES OF JOHN L. BURRIS
3  Airport Corporate Centre
   7677 Oakport Street, Suite 1120
4  Oakland, California 94621
   Telephone: (510) 839-5200          Facsimile:  (510) 839-3882

5  Attorneys for Plaintiffs

6
                                                     FILED

                                                AUG 2 5 2009

                                        RICHARD W. WIEKING
                                  NORTHERN DISTRICT COURT
                                        DISTRICT OF CALIFORNIA
                                              OAKLAND

7                      UNITED STATES DISTRICT COURT                      ADR

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
   TERESA SHEEHAN,                         Case No.  C09-03889 CRB
10
11           Plaintiff,                    **COMPLAINT FOR DAMAGES FOR
                                           VIOLATION OF CIVIL RIGHTS.
                                           JURY TRIAL DEMANDED**
12           vs.

13  CITY AND COUNTY OF SAN FRANCISCO,
   a municipal corporation; HEATHER FONG, in
14  her capacity as Chief of Police for the CITY
   AND COUNTY OF SAN FRANCISCO;
15  KIMBERLY REYNOLDS , individually, and in
   her capacity as a police officer for the CITY
16  AND COUNTY OF SAN FRANCISCO;
   KATHERINE HOLDER, individually and in her
17  capacity as a police officer for the CITY AND
   COUNTY OF SAN FRANCISCO; and, San
18  Francisco police officers DOES 1-25, inclusive,
19
20           Defendants.
                                     /
21

22                              INTRODUCTION

23      On August 7, 2008, Defendant Officers KIMBERLY REYNOLDS and KATHERINE

24  HOLDER shot Plaintiff TERESA SHEEHAN five times at Plaintiff's residence, an apartment at

25  Conard co-op, located at1941 15th Street in San Francisco.  Defendants forced entry into Plaintiff's

26  residence, without a warrant and against Ms. SHEEHAN's objections.  Ms. SHEEHAN, a 56 year old

27  woman who suffers from schizo-affective disorder and who had no history of violence, lived

28

1    independently at Conard co-op, a cooperative program for people who suffer chronic mental illness,
2    with assistance from counselors supervised by a social worker named Heath Hodge.

3           On the morning of the shooting, Mr. Hodge entered Plaintiff's apartment using a key, without
4    Plaintiff's permission, saw Plaintiff lying on a bed, and Plaintiff told him to leave her residence. Mr.
5    Hodge observed no weapon. Plaintiff did not display a knife, but, according to Mr. Hodge, threatened
6    to use a knife against Mr. Hodge if he did not leave her residence. A property manager, who was
7    present with Mr. Hodge, heard no such threats by Plaintiff. Mr. Hodge called the police to help effect
8    a Welfare and Institutions section 5150 detention of Plaintiff. Defendant Officer HOLDER
9    responded to Mr. Hodge's call, but could not determine whether there was sufficient basis to
10   reasonably believe that Plaintiff could not care for herself, or represented a threat to herself or others,
11   when Plaintiff simply did not want Mr. Hodge to be inside her residence. Defendant Officer
12   HOLDER requested further assistance, and Defendant Officer REYNOLDS, a sergeant, responded to
13   the scene. She concurred with Mr. Hodge on the 5150 after speaking to him. Plaintiff had not
14   threatened anyone, except allegedly Mr. Hodge when he entered her room, and that verbal threat
15   arose, if it occurred, only after and because Mr. Hodge forced his way into Plaintiff's private
16   residence.

17          A short time later, although backup officers were en-route to the scene with less-lethal
18   weapons, no imminent threat of harm was posed by Plaintiff, who was not suicidal and who was
19   clearly alone inside her apartment, Defendant Officers REYNOLDS and HOLDER forced open the
20   door to Ms. SHEEHAN's apartment. Both defendant officers then shot Ms. SHEEHAN, who also
21   told the officers, before they forced entry into her residence, that she had a knife and did not want
22   them to enter the residence.

23          Ms. SHEEHAN fell to the ground after being shot five times in the torso by the defendant
24   officers. Defendant Officer REYNOLDS then, maliciously and without any justification, shot Ms.
25   SHEEHAN one final time, in Ms. SHEEHAN's head. Against all odds, Ms. SHEEHAN survived the
26   shooting and attempted execution, but is permanently physically disabled as a consequence of the
27   shooting.

28

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                                              2

## JURISDICTION

1.     This action arises under Title 42 of the United States Code, Sections 1983 and 12132. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in the City and County of San Francisco, California, which is within this judicial district.

## PARTIES

2.     Plaintiff herein, TERESA SHEEHAN ("SHEEHAN"), is and was at all times herein mentioned a citizen of the United States residing in the City and County of San Francisco in California. Plaintiff TERESA SHEEHAN is a qualified individual with a recognized disability pursuant to 42 United States Code, Section 12132.

3.     Defendant City and County of San Francisco ("CITY") is a municipal corporation, duly organized and existing under the laws of the State of California. Under its authority, the City operates the San Francisco Police Department.

4.     At all times mentioned herein, Defendant HEATHER FONG ("FONG") was employed by defendant CITY as Chief of Police for the CITY.   She is being sued in her official capacity as Chief of Police for the CITY.

5.     At all times mentioned herein, Defendant KIMBERLY REYNOLDS ("REYNOLDS") was employed by Defendant CITY as a police officer. She is being sued individually and in her official capacity as a police officer for the City.

6.     At all times mentioned herein, Defendant KATHERINE HOLDER ("HOLDER") was employed by Defendant CITY as a police officer.  She is being sued individually and in her official capacity as a police officer for the City.

7.     Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 25, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein.  Plaintiffs will amend their complaint to state the names and capacities of DOES 1-25, inclusive, when they have been ascertained.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                                                    3

1    8.    In engaging in the conduct described herein, Defendant police officers acted under the
2    color of law and in the course and scope of their employment with the City. In engaging in the
3    conduct described herein, Defendant police officers exceeded the authority vested in them as police
4    officers under the United States and California Constitutions and as police officers employed by
5    Defendant CITY.

6    9.    Plaintiff is required to comply with an administrative tort claim requirement under
7    California law. Plaintiff has complied with all such requirements.

8                                    STATEMENT OF FACTS

9    10    On August 7, 2008, Plaintiff TERESA SHEEHAN, a 56 year old woman with no
10   criminal record, resided at Conard co-op, located at 1941 15th Street, in San Francisco, in a room of
11   which she was the sole lessee. No one else resided in Plaintiff's room at Conard co-op. Plaintiff
12   SHEEHAN had lived at Conard co-op for several years. Conard co-op is an independent-living,
13   cooperative program in San Francisco for people suffering from chronic mental illness. Plaintiff
14   SHEEHAN had no history of violence. Residents of Conard co-op become residents by referral
15   through Defendant CITY AND COUNTY OF SAN FRANCISCO. Plaintiff alleges that Defendant
16   CITY provides funding for Conard co-op. Plaintiff SHEEHAN has suffered from chronic schizo-
17   affective disorder since she was a young woman. Plaintiff SHEEHAN takes medication to control
18   the psychiatric disorder. A social worker supervises five counselors who work at Conard co-op,
19   assisting residents in their daily living, treatment, and medication. At the time of the subject-incident,
20   Heath Hodge was the social worker for Conard co-op, and was on-call to provide assistance as
21   requested.

22   11.   On August 7, 2008, Mr. Hodge came to Conard co-op of his own accord, without
23   being called, to check on Plaintiff. Plaintiff had been absent from house meetings and meetings with
24   staff for two weeks, and was reportedly coming and going at odd hours. During this time, when
25   Plaintiff was home, she kept to herself in her room. The previous day, August 6, 2008, Plaintiff met
26   with a San Francisco Police Department officer, off-site from Conard co-op, regarding Plaintiff's
27   concerns that some of her property at Conard co-op had been stolen. That officer spent significant
28   time with Plaintiff. Plaintiff gave her a key to the residence, and the officer went alone to Conard co-

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                                          4

op to investigate Plaintiff's missing property. That officer later testified in the criminal trial pertaining to the subject-incident that Plaintiff did not appear to be psychotic, a danger to herself or others, or unable to care for herself. That officer did not prepare a police report of the contact or of her investigation.

12. Mr. Hodge decided to make contact with Plaintiff on the day of the subject-incident, and knocked on the door to her room. Plaintiff's door was locked. When Plaintiff did not respond to Mr. Hodge's knocks, Mr. Hodge used a pass-key provided by the property manager, who was present, to unlock Plaintiff's door from the outside. Mr. Hodge saw Plaintiff lying on her bed, next to the door, with a book laying on her chest. Plaintiff reacted to Mr. Hodge's unwanted presence by yelling at him to get out of her room. According only to Mr. Hodge, Plaintiff allegedly jumped out of bed, told Mr. Hodge that he did not have a warrant authorizing his entry, and told Mr. Hodge that if he did not leave the room that she had a knife and would kill him. Plaintiff and Mr. Hodge did not have a good working relationship, and Mr. Hodge was aware that Plaintiff wanted little interaction with him. Although other witnesses were present, Mr. Hodge is the only person who heard Plaintiff make any type of alleged threat. Other witnesses present did not hear Plaintiff make any threat or claim to have a knife, and Plaintiff made no threat to anyone.

13. Plaintiff brandished no weapon at Mr. Hodge, and Mr. Hodge never saw any weapons in Plaintiff's room. However, Mr. Hodge left Plaintiff's room and slammed her door closed. Mr. Hodge decided to "5150" Plaintiff, so he called the police to request their help in detaining Plaintiff pursuant to a Welfare and Institutions section 5150 hold, in which a person may be detained against their will if certain criteria are met. Pursuant to section 5150, a peace officer or a designated member of a facility designated by the County may, upon probable cause, take or cause to be taken a person who, as a result of a mental disorder, is a danger to others, oneself, or gravely disabled, to an approved facility for 72-hour treatment and evaluation. Although Mr. Hodge reportedly possessed a card that authorized him to initiate a section 5150 hold, Plaintiff alleges that her insistence on Mr. Hodge leaving her room, in which she had a cognizable Fourth Amendment privacy interest, even if Plaintiff made a conditional threat to Mr. Hodge, which Plaintiff disputes, was insufficient basis to detain Plaintiff pursuant to section 5150.

14. Defendant Officer HOLDER responded to Mr. Hodge's call to police. When she arrived at Conard co-op, she spoke with Mr. Hodge outside of the building. Unconvinced that Mr. Hodge had the authority to initiate an involuntary detention of Plaintiff pursuant to section 5150, Defendant Officer HOLDER called a superior officer to the scene. Defendant Officer REYNOLDS, a sergeant, responded to the scene, spoke with Mr. Hodge, observed his pink "5150 card" and a 5150 form Mr. Hodge had filled out. Although Defendant Officer REYNOLDS could not read much of Mr. Hodge's illegible, handwritten 5150 form, she agreed to detain Plaintiff to evaluate her further for section 5150 detention based upon their discussion, which indicated that Plaintiff had been off her medication and purportedly threatened to stab or kill Mr. Hodge. Even assuming Mr. Hodge related the alleged conditional threat made by Plaintiff, Plaintiff alleges there was insufficient probable cause to believe that Plaintiff posed a sufficient danger to herself, others, or was gravely disabled, to detain her pursuant to section 5150, and that only a plainly incompetent police officer could have believed otherwise.

15. Mr. Hodge accompanied both Defendant Officers into Conard co-op and gave Defendant Officer REYNOLDS the master key to Conard co-op and the door to Plaintiff's residence. Once inside Conard co-op, Mr. Hodge identified the door to Plaintiff's unit and both Defendant Officers HOLDER and REYNOLDS approached the door to Plaintiff's unit. Without any further information and without attempting to obtain a court order or search warrant, Defendant Officer REYNOLDS told Defendant Officer HOLDER that the plan was for them enter Plaintiff's private residence. Defendant Officer REYNOLDS put the key into the lock on Plaintiff's door and yelled "We are the police; we want to help you!" Plaintiff did not respond. Defendant Officer REYNOLDS then opened Plaintiff's door and Plaintiff appeared to be lying on her bed. Plaintiff began to get up off her bed and told the officers that they did not have a search warrant and could not enter her room. Plaintiff also indicated that she had already called police.

16. When the defendant officers did not leave Plaintiff's room, Plaintiff allegedly got off her bed, picked up a knife, and threatened the officers. Defendant Officers backed out of Plaintiff's residence, and Plaintiff slammed the door closed on them. Plaintiff did not open the door to her room after that.

17. Defendant Officer HOLDER then called for backup on her police radio while Defendant Officer REYNOLDS continued to talk to Plaintiff through the closed door. Both Defendant Officers drew their firearms. Defendant Officer HOLDER directed radio dispatch to the correct address, and Defendant Officer REYNOLDS heard, over dispatch radio, that more officers were en-route to Plaintiff's residence, along with a less-lethal unit.

18. Defendant Officer REYNOLDS requested that Officer HOLDER remove her pepper-spray because Officer REYNOLDS intended to gain access to Plaintiff's room. Defendant Officer REYNOLDS tried to speak with Plaintiff and attempted to force Plaintiff's door open. Defendant Officer HOLDER, who had a bit more physical heft than Officer REYNOLDS, volunteered to take over the forced-entry of Plaintiff's door. Defendant Officer REYNOLDS asked Mr. Hodge to open the door to Conard co-op and let backup officers into the residence. Mr. Hodge left the immediate scene to open the front door for backup officers to enter the residence.

19. Defendant Officer HOLDER ensured that Plaintiff's door was unlocked, but could not open Plaintiff's door, which remained closed. Defendant Officer HOLDER hit the door with her shoulder several times while holding the doorknob. Eventually, Defendant Officer HOLDER forced the door open and observed Plaintiff several feet from the door entry, with her back to the officer. Plaintiff allegedly held a knife in one of her hands, made a statement that she was going to "kill you," and began walking toward Defendant Officers, who were one step into Plaintiff's room.

20. Defendant Officer REYNOLDS discharged pepper-spray toward Plaintiff, who wore glasses, while Defendant Officer HOLDER backed out of Plaintiff's room. Plaintiff allegedly walked toward Defendant Officers with a knife raised in her hand, and Defendant Officer HOLDER discharged her firearm at Plaintiff two to three times. Each shot struck Plaintiff. Defendant Officer REYNOLDS also shot Plaintiff two times, striking Plaintiff. Plaintiff fell forward and fell to the ground. All five shots struck Plaintiff's body.

21. After Plaintiff fell to the ground, having been shot five times, Defendant Officer REYNOLDS discharged one final gunshot directly into the left temple of Plaintiff's forehead. The gunshot exited through Plaintiff's left cheek, and caused numerous facial fractures and injuries. Plaintiff posed no reasonable threat to anyone when Defendant Officer REYNOLDS fired this last

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES

gunshot directly into Plaintiff's head. Miraculously, Plaintiff survived the shooting and attempted execution.

22.    Plaintiff was arrested and transported to San Francisco General Hospital. Plaintiff received extensive medical care and treatment for her injuries. Plaintiff was admitted to San Francisco General Hospital following the arrest and shooting, with multiple gunshot wounds. The gunshot wounds included wounds to the left forehead temple area and face, left chest, right chest, left groin/abdomen, and right upper extremity. A bullet was lodged below Plaintiff's diaphragm. Plaintiff suffered through-and-through gunshot wounds to her left breast, right breast, right chest, and right arm. Plaintiff suffered a right axillary gunshot wound, and left-lower quadrant/groin gunshot wound, and superficial wounds to the right upper quadrant of her abdomen.

23.    The gunshot wound to Plaintiff's head was to the left temple and left side of the mouth, causing fractures of the lateral orbital wall extending down to the left wall of the maxillary sinus, multiple zygomatic arch fractures, and inferior orbital wall fracture, and fluid in the left maxillary sinus. Plaintiff required blood transfusions and surgical operations before being transferred to the Intensive Care Unit.

24.    In total, Plaintiff suffered 14 gunshot wounds inflicted by Defendant Officers REYNOLDS and HOLDER, with the final gunshot wounds inflicted against Plaintiff's forehead and face, after Plaintiff was on the ground and posed no threat.

25.    Plaintiff was hospitalized for two weeks after the shooting. The shooting also caused a fracture to her left leg, which required the implantation of a metal rod held in place by screws in the femur. Plaintiff was transported to San Francisco County Jail after her release from San Francisco General Hospital. Plaintiff received no rehabilitative assistance, and was forced to walk despite her verbal protests of pain in her leg and body. The surgical repair to Plaintiff's femur had broken, due to the lack of adequate rehabilitation and care while Plaintiff remained in the custody of Defendant CITY AND COUNTY OF SAN FRANCISCO. Plaintiff was then hospitalized again for repair of her fractured femur until Plaintiff was released on her own recognizance in December 2008, after enduring a trial on criminal charges arising out of the subject-incident.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                                             8

26.  Plaintiff was confined to a wheelchair until mid-March 2009, when her injuries healed enough that she was able to walk with the assistance of a walker. Plaintiff is now able to walk without the assistance of a walker. Plaintiff's right arm is severely damaged due to the shooting. Plaintiff remains severely disabled and disfigured as a consequence of the subject-incident shooting.

27.  Plaintiff fought the criminal charges filed against her, including one count of making criminal threats, two counts of assault with a deadly weapon, and two counts of assault on a peace officer, through a jury trial that concluded on December 17, 2008. Plaintiff was acquitted of making criminal threats. A mistrial was declared on the remaining counts when jurors could not reach a unanimous verdict. Plaintiff is informed and believes that of the 12-person jury, 11 jurors were in favor of Plaintiff's acquittal on the charges of assault with a deadly weapon and assault on a peace officer.

28.  The shooting of Plaintiff as described herein was excessive force by Defendant Officer REYNOLDS and HOLDER.

29.  Plaintiffs further allege that the shooting of Plaintiff was the proximate result of Defendant CITY's failure to reasonably train their police officers in the proper and reasonable use of force and in forcing warrantless entries into residences without sufficient emergency or exigent circumstances. Plaintiffs further allege that these substantial failures reflect Defendant CITY's policies implicitly ratifying and/or authorizing the use of excessive force by its police officers and the failure to reasonably train police officers employed by Defendant CITY in making warrantless entries into private residences.

30.  On June 6, 2006, more than two years before the subject-incident, two San Francisco Police Department officers shot and killed an unarmed man, Asa Sullivan, after a third San Francisco Police officer forced a warrantless entry, without exigency of emergency circumstances, into 2 Garces Drive. Plaintiff alleges that although Defendant CITY was on notice of its deficiencies in training officers regarding warrantless entries into residences, Defendant CITY failed to take remedial measures in training its officers in warrantless entry into residences, proximately causing the near-fatal shooting of Plaintiff TERESA SHEEHAN. In addition, as in the instant shooting of Plaintiff, officers at 2 Garces Drive on June 6, 2006 were aware that a less-lethal weapons unit was

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                                                    9

en route to the residence. Instead of waiting for the less-lethal unit, officers at 2 Garces Drive ignored advice from other officers to stand down, and insisted on escalating a standoff with an unarmed person into a lethal force shooting.

31.    The shooting of Plaintiff TERESA SHEEHAN described herein was brutal, malicious, and done without just provocation or cause, proximately causing Plaintiff's injuries and resulting damages.

## DAMAGES

32.    As a proximate result of Defendants' conduct, Plaintiff suffered pain and physical injuries, including 14 gunshot wounds, bodily and facial disfigurement and scarring, broken and/or fractured bones, and multiple surgeries. As a further proximate result of Defendants' conduct, Plaintiff suffered severe and extreme emotional distress, fear, terror, anxiety, humiliation, and loss of his sense of security, dignity, and pride as a United States citizen.

33.    Plaintiff was assaulted, battered, and arrested without any just provocation or probable cause, by defendant officers. Plaintiff was physically, mentally, and emotionally injured and damaged as a proximate result of this incident, as described herein.

34.    The conduct of Defendant Officers REYNOLDS, HOLDER and DOES 1-10 was malicious, wanton, and oppressive. Plaintiff is therefore entitled to an award of punitive damages against said defendant police officers of the CITY.

35.    Plaintiff suffered malicious prosecution damages incurred after she was charged with a crime arising out of the subject-incident.

36.    Plaintiff found it necessary to engage the services of private counsel to vindicate her rights under the law. Plaintiff is therefore entitled to an award of all attorney's fees incurred in relation to this action for violation of her civil rights.

### FIRST CAUSE OF ACTION
(42 U.S.C. Section 1983)
(Against Defendant Officers REYNOLDS, HOLDER, and DOES 1-10)

37.    Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 35 of this Complaint.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                    10

38.     In doing the acts complained of herein, Defendants REYNOLDS, HOLDER and

DOES 1-10, inclusive, and/or each of them, acted under color of law to deprive Plaintiff of certain

constitutionally protected rights, including, but not limited to:

a.      The right to be free from unreasonable searches and seizures, as guaranteed by the

        Fourth and Fourteenth Amendments to the United States Constitution;

b.      The right not to be deprived of life or liberty without due process of law, as guaranteed

        by the Fifth and Fourteenth Amendments to the United States Constitution;

c.      The right to be free from the use of excessive force by police officers, which is

        guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States

        Constitution;

d.      The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment

        to the United States Constitution;

e.      The right to be free from interference with the zone of privacy, as protected by the

        Fourth and Ninth Amendments to the United States Constitution;

f.      The right to be free from malicious prosecutions; and/or

39.     Said rights are substantive guarantees under the First, Fourth, Fifth and/or Fourteenth

Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

SECOND CAUSE OF ACTION
(42 U.S.C. section 1983)
(Against Defendants CITY, FONG and DOES 11-25)

40.     Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through

39 of this Complaint.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                                          11

41.     Plaintiff is informed and believes and thereon alleges that high ranking City and County of San Francisco officials, including Chief FONG, high ranking police supervisors, DOES 11 through 25, and/or each of them, knew and/or reasonably should have known about the repeated acts of misconduct by Defendant Officers REYNOLDS, HOLDER, DOES 1-10, and/or each of them.

42.     Plaintiff is further informed and believes and thereon alleges that high ranking City and County of San Francisco officials, including Chief FONG, high ranking police supervisors, DOES 11-25, and/or each of them, knew and/or reasonably should have known, of repeated acts of warrantless entry into private residences, without exigency of emergency, by San Francisco Police Department officers, including one such warrantless entry that resulted in the foreseeable shooting death of an unarmed person on June 6, 2006.

43.     Despite having such notice, Plaintiff is informed and believes and thereon alleges that Defendants CITY, FONG and DOES 11-25, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by San Francisco Police Department officers.

44.     Plaintiff is further informed and believes and thereon alleges that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendants REYNOLDS, HOLDER, DOES 1-10, and/or each of them, Defendants CITY, FONG, DOES 11-25, and/or each of them, encouraged these officers to continue their course of misconduct, resulting in the violation of the Plaintiff's rights as alleged herein.

45.     The aforementioned acts and/or omissions and/or deliberate indifference by high ranking City and County of San Francisco officials, including, Chief FONG, high ranking City of Oakland Police Department supervisors, Defendants DOES 11-25, and each of them resulted in the deprivation of Plaintiff's constitutional rights including, but not limited to, the following:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

e. The right to be free from interference with the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution;

f. The right to be free from malicious prosecution; and/or

46.    Said rights are substantive guarantees under the First, Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

THIRD CAUSE OF ACTION
(42 U.S.C. section 1983)
(Against Defendant CITY AND COUNTY OF SAN FRANCISCO)

47.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 through 46 of this Complaint.

48.    As against Defendant CITY, FONG, and/or DOES 11-25 in her/their capacity as official policy-maker(s) for the CITY AND COUNTY OF SAN FRANCISCO, Plaintiff further alleges that the acts and/or omissions alleged in the Complaint herein are indicative and

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                                              13

representative of a repeated course of conduct by members of the CITY AND COUNTY OF SAN FRANCISCO Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens.

49. Plaintiff is further informed and believes and thereon alleges that the acts and omissions alleged herein are the direct and proximate result of the deliberate indifference of Defendants CITY, Fong, DOES 11-25, and each of them, to repeated acts of police misconduct which were tacitly authorized, encouraged or condoned by the Defendants CITY, FONG, DOES 11-25, and/or each of them.

50. The injuries and damages to Plaintiff as alleged herein were the foreseeable and proximate result of said customs, policies, patterns and/or practices of Defendants CITY, FONG, DOES 11-25, and each of them.

51. Plaintiff is further informed and believes and thereon alleges that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training, supervision and/or discipline of members of the Defendant SAN FRANCISCO Police Department.

52. Plaintiff is further informed and believes and upon such information and belief alleges that Plaintiff's damages and injuries were caused by customs, policies, patterns or practices of Defendants CITY, FONG, DOES 11-25, and each of them, of deliberate indifference in the training, supervision and/or discipline of Defendants HOLDER, REYNOLDS, DOES 1-10, and/or each of them.

53.     The aforementioned customs, policies or practices of Defendant CITY, Defendant

FONG, Defendant DOES 11-25, and each of them, resulted in the deprivation of Plaintiff's

constitutional rights including, but not limited to, the following:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth

and Fourteenth Amendments to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by

the Fifth and Fourteenth Amendments to the United States Constitution;

c. The right to be free from the use of excessive force by police officers, which is guaranteed

by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to

the United States Constitution;

e. The right to be free from interference with the zone of privacy, as protected by the Fourth

and Ninth Amendments to the United States Constitution; and/or

f. The right to be free from malicious prosecution;

54.     Said rights are substantive guarantees under the First, Fourth, Fifth and/or Fourteenth

Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

FOURTH CAUSE OF ACTION
(Violation of 42. U.S.C. section 12132)
(Against all Defendants herein)

55.     Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 through

54 of this Complaint.

56.     As against Defendant CITY, FONG, and/or DOES 11-25 in her/their capacity as

official policy-maker(s) for the CITY AND COUNTY OF SAN FRANCISCO, Plaintiff further

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DAMAGES                                                    15

alleges that said defendants failed to train, supervise, and or discipline Defendants REYNOLDS, HOLDER, and/or DOES 1-10, in recognizing symptoms of disability under title II of the Americans With Disabilities Act; from excluding qualified individuals such as Plaintiff SHEEHAN from participation in or denial of benefits of services provided by Defendant CITY, or in otherwise discriminating against such qualified individuals with symptoms of disability recognized under title II of the Americans with Disabilities act, resulting in the shooting of Plaintiff SHEEHAN during the course of the subject-incident and her resulting damages.

57.     At the time Defendant Officers HOLDER and REYNOLDS responded to Conard co-op, after speaking with Heath Hodge and obtaining information from Mr. Hodge, Defendant Officers REYNOLDS, HOLDER, and/or DOES 1-10, were faced with no reasonable exigency when they forced entry into Plaintiff SHEEHAN's leased unit at Conard co-op. Said defendants had no information, and no reasonable belief, that anyone other than Plaintiff was present inside her unit, and were aware of Plaintiff's disability and the symptoms and manifestations of Plaintiff's recognized disability. The aforementioned conduct of Defendant Officers REYNOLDS, HOLDER, and/or DOES 1-10, excluded Plaintiff from participation in, denied Plaintiff the benefits of Defendant CITY AND COUNTY OF SAN FRANCISCO's programs and activities, and/or discriminated against Plaintiff.

58.     The exclusion, denial of benefits, and/or discrimination against Plaintiff was by reason of Plaintiff's recognized disability.

59.     WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

FIFTH CAUSE OF ACTION
(Assault and Battery)
(Against Defendants REYNOLDS, HOLDER and DOES 1-10)

60.     Plaintiff realleges and incorporates by reference herein paragraphs 1 through 59 of this Complaint.

61.     Defendants REYNOLDS, HOLDER and DOES 1-10, inclusive, placed Plaintiff in immediate fear of death and severe bodily harm by attacking and battering her without any just provocation or cause.

62.     These defendants' conduct was neither privileged nor justified under statute or common law.

63.     As a proximate result of defendants' conduct, Plaintiff suffered damages as hereinafter set forth.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

SIXTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
(Against Defendants REYNOLDS, HOLDER, and DOES 1-10)

64.     Plaintiff realleges and incorporates by reference herein paragraphs 1 through 63 of this Complaint.

65.     The conduct of Defendants REYNOLDS, HOLDER, and DOES 1-10, inclusive, as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a democratic and civilized society. Defendants committed these extreme and outrageous acts with the intent to inflict severe mental and emotional distress upon Plaintiff.

66.     As a proximate result of Defendants' willful, intentional and malicious conduct, plaintiff suffered severe and extreme mental and emotional distress. Therefore, Plaintiff is entitled to an award of punitive damages as against said defendants. Plaintiff has suffered damages as hereinafter set forth.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

SEVENTH CAUSE OF ACTION
(Violation of Civil Code Section 52.1)
(Plaintiff against Defendants REYNOLDS, HOLDER, and DOES 1-10)

67.     Plaintiff realleges and incorporates by reference herein paragraphs 1 through 66 of this Complaint.

68.     The conduct of Defendants REYNOLDS, HOLDER, and DOES 1-10, inclusive, as described herein, acting in the course and scope of their employment for Defendant CITY, violated California Civil Code Section 52.1, in that they interfered with Plaintiff's exercise and enjoyment of her civil rights, through use of wrongful and excessive force, forced warrantless entry into Plaintiff's residence, and failure to make any proper or reasonable arrest of said Plaintiff, all accomplished through force, threats, intimidation, and coercion.

69.     As a direct and proximate result of Defendants' violation of Civil Code Section 52.1, Plaintiff suffered violation of her constitutional rights, and suffered damages as set forth herein.

70.     Since this conduct occurred in the course and scope of their employment, Defendant CITY is therefore liable to Plaintiff pursuant to respondeat superior.

71.     Plaintiff is entitled to injunctive relief and an award of her reasonable attorney's fees pursuant to Civil Code Section 52.1(h).

WHEREFORE, Plaintiff prays for relief, as hereinafter set forth.

EIGHTH CAUSE OF ACTION
(Negligence)
(Against Defendants REYNOLDS, HOLDER and DOES 1-10)

72.     Plaintiff realleges and incorporates by reference herein paragraphs 1 through 71 of this complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

73.     At all times herein mentioned, Defendants REYNOLDS, HOLDER, and DOES 1-10, inclusive, were subject to a duty of care to avoid causing unnecessary physical harm and distress to persons through their use of force and making of arrests. The wrongful conduct of Defendants, as set

forth herein, did not comply with the standard of care to be exercised by reasonable persons, proximately causing plaintiff to suffer injuries and damages as set forth herein. Pursuant to Government Code Section 815.2(a), Defendant CITY is vicariously liable to Plaintiff for her injuries and damages suffered as alleged herein, incurred as a proximate result of the aforementioned wrongful conduct of Defendants.

74.     As a proximate result of Defendants' negligent conduct, Plaintiff suffered severe physical injury, severe emotional and mental distress, injury having a traumatic effect on Plaintiff's emotional tranquility, and suffered damages.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

JURY DEMAND

75.     Plaintiff hereby demands a jury trial in this action.

PRAYER

WHEREFORE, Plaintiff prays for relief, as follows:

1.     For general damages in a sum of $10,000,000.00;

2.     For special damages in a sum according to proof;

3.     For punitive damages in a sum according to proof;

4.     For injunctive relief enjoining Defendant CITY AND COUNTY OF SAN FRANCISCO from authorizing, allowing, or ratifying the practice by any police officer employee of Defendant CITY from using excessive and unreasonable force against persons, pursuant to California Civil Code Section 52.1;

5.     For violation of California Civil Code Sections 52 and 52.1, statutory damages, and reasonable attorney's fees;

6.     For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988 and 29 U.S.C. Section 794a;

7.     For the costs of suit herein incurred; and

8.    For such other and further relief as the Court deems just and proper.

Dated:  August 18, 2009                          **The Law Offices of John L. Burris**

John L. Burris, Esq.
Attorney for Plaintiff