DENNIS J. HERRERA, State Bar #139669
City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
PETER J. KEITH, State Bar #206482
Deputy City Attorney
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3908
Facsimile:     (415) 554-3837
E-Mail:        peter.keith@sfgov.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO et al.

JOHN L. BURRIS, State Bar #69888
BENJAMIN NISENBAUM, State Bar #222173
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:     (510) 839-5200
Facsimile:     (510) 839-3882

Attorneys for Plaintiff
TERESA SHEEHAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA SHEEHAN,<br><br>        Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; HEATHER FONG, in her capacity as Chief of Police for the CITY AND COUNTY OF SAN FRANCISCO; KIMBERLY REYNOLDS, individually, and in her capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; KATHERINE HOLDER, individually and in her capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; and, San Francisco police officers DOES 1-25, inclusive,<br><br>        Defendants. | Case No. C09-03889 CRB<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Hearing Date:  August 28, 2015<br>Time:  8:30 a.m.<br>Place:  Courtroom 6, 17th Floor<br>        San Francisco |

Following remand from the United States Supreme Court and the Ninth Circuit Court of Appeals, the parties submit this joint case management conference statement.

### 1. Factual background

The claims in this case arise from a 2008 incident when San Francisco police officers responded to a call for assistance from a social worker employed by Conard House, a non-profit organization that operates supportive housing in San Francisco for persons with mental illness and other problems.

#### a. Defendants' version

A Conard House social worker, Heath Hodge, was trying to detain Plaintiff Teresa Sheehan for involuntary hospitalization under California Welfare & Institutions Code section 5150. The detention was sought because Sheehan suffers from schizoaffective disorder, and she threatened to stab Hodge with a knife. Hodge concluded that as a result of her mental illness Sheehan posed a danger to others and was "gravely disabled" – unable to provide for her basic needs. Hodge requested police assistance to detain Sheehan because of her threat to stab him.

Defendant Officer Kathrine Holder and Defendant Sergeant Kimberly Reynolds responded to Hodge's call. Without getting into great detail about what occurred, the officers spoke to Ms. Sheehan through her closed door in a calm and non-threatening manner. Still calm and unarmed, they opened her door. Sheehan screamed at the officers that she would kill them, threatened the officers with a large knife, forced them back, and closed her door. At that point, the officers were very concerned. They worried that Sheehan, out of their sight, might gather more weapons and fortify herself against her inevitable arrest, might continue her attack on the officers, or even try to avoid arrest by fleeing through the back window and out into the street where she could harm civilians; they also could not tell whether anyone else was in her room. The officers decided that safety concerns required them to quickly take Sheehan into custody. The officers knew that Sheehan was unstable and unpredictable, she had just threatened to kill three people, she had a weapon, she had a potential escape route, and there was no officers yet guarding the back of the building. In making the decision to take action quickly, Sergeant Reynolds did not ignore Sheehan's disability; she simply determined that whatever she could do regarding Sheehan's disability was "secondary" to the safety threat Sheehan posed.

Moreover, Sergeant Reynolds decided to try lesser measures first to subdue Sheehan, using pepper spray – rather than a service firearm, which is what an officer would normally use first if attacked with a knife by someone who was not mentally ill.  In addition, Sergeant Reynolds continued to try to reassure Sheehan that the officers were there to help her.  After some effort, the officers were able to get the door open.  When they did, Sheehan turned toward the officers, screamed she would kill them, came out into the hallway, and attacked the officers with her knife.  Pepper spray did not work to stop her.  Sheehan was within arms' length of the officers, attacking them with her knife, when they finally were forced to shoot her.  Sheehan survived.

### b. Plaintiff's version

The social worker, Heath Hodge, was attempting to initiate a California Welfare & Institutions Code section 5150 72 hour detention of Plaintiff Teresa Sheehan because Ms. Sheehan, who suffers from schizoaffective disorder, had not been taking psychiatric medication she had been prescribed for treatment of the disorder for an extended period of time and was obviously decompensating. The 5150 was an attempt to force Ms. Sheehan into hospitalization for treatment.  When Mr. Hodge attempted the 5150 himself, Ms. Sheehan refused it and told Mr. Hodge that she had a knife.  Mr. Hodge then called the police in an effort to facilitate safe transportation for Ms. Sheehan to the hospital for treatment of her psychiatric disorder.

The Court is familiar with the facts of what happened once the defendants arrived.  Plaintiff contends that her rights under the ADA, and under state law, were violated when the Defendants failed to give reasonable accommodation or consideration for her psychiatric disability when they forced a second confrontation after Ms. Sheehan closed and locked her door after they backed out of her room after showing the police the knife in her hand and reportedly saying: "I'll kill you" or something along those lines.  At that time Ms. Sheehan was effectively contained in her room, and with the door closed posed no realistic threat to anyone: She was obviously alone in her second floor bedroom, could only escape from out the second floor window with the only other exit being the front door of the apartment, and Mr. Hodge had cleared the building.  Instead of attempting to further attack the officers, Ms. Sheehan closed the door on them.  Defendant Reynold's acknowledged the threat from Ms. Sheehan's knife was non-existent with the door closed, and there was no report of any other

weapons. Backup was arriving and a critical incident team specially trained to respond to people in this exact circumstance would be able to respond, if not already responding. On hearing the sound of the siren of backup officers arriving, Defendants sent Mr. Hodge downstairs to open the front door of the building for the backup officers. Then, instead of actually waiting for backup to arrive, and develop a plan, use a negotiator, or any of the tools that San Francisco Police Department trains its officers in responding to mentally impaired people, or people obviously suffering from psychiatric illnesses, Defendant Reynolds ordered Defendant Holder to force the door open. Defendant Holder did that, and subsequently both officers fired a total of 5 shots at Ms. Sheehan, who lived. Defendants acknowledge they gave no consideration for Ms. Sheehan's psychiatric disability once Ms. Sheehan shut the door on them. Defendants also acknowledge they were aware of the basis of 5150, that they were on notice of Ms. Sheehan's psychiatric disability, and had been told by Mr. Hodge that he had cleared the building of other residents.

### 2. Procedural history and remaining legal claims after remand

Sheehan filed this action, making various federal and state law claims against the various defendants. Fact discovery and expert discovery concluded in late 2010 and early 2011.

This Court granted the defendants' motion for summary judgment (Doc. 61), and entered judgment in favor of defendants (Doc. 62). The Ninth Circuit affirmed in part and vacated in part. (Doc. 70.) The United States Supreme Court reversed in part the decision of the Ninth Circuit. (Doc. 74.) The Ninth Circuit remanded. (Doc. 76.)

Following these appeals, there are no 42 U.S.C. section 1983 claims remaining in the case. On remand, the legal claims currently remaining in the case are:

(1) the Americans with Disabilities Act claim against City and County of San Francisco;

(2) the state law claims against all defendants.

#### a. Disputed issues: Defendants' version

As to the Americans with Disabilities Act reasonable accommodations claim:

1. Whether Plaintiff was "qualified" within the meaning of 42 U.S.C. § 12131(2)

2. Whether Plaintiff was a "direct threat" under 28 C.F.R. §§ 35.139, § 35.104, including whether officers made a "reasonable judgment" about the risk posed by Plaintiff.

3. Whether the accommodations already provided to Plaintiff were sufficient.

4. Whether the accommodations proposed by Plaintiff were reasonable.

5. Whether the City and County of San Francisco was deliberately indifferent as required for a damages claim.

6. Whether the proposed accommodation would be a fundamental alteration of the program at issue.

As to the state law claims:

7. Whether some or all of the state law claims are barred by collateral estoppel, following final determination of the section 1983 claims in favor of the officers.

8. Whether various state law immunities or privileges, other than Welfare & Institutions Code section 5278, bar Plaintiff's state law claims against all defendants.

9. Whether Plaintiff can establish the elements of an intentional infliction of emotional distress claim.

10. Whether Plaintiff can establish the elements of a Civil Code section 52.1 claim.

11. Whether Chief Fong had any duty, breached it, or is immune from liability.

12. Whether the officers breached a duty not to use unreasonable force.

13. Whether the evidence supports a claim for punitive damages against the officers.

### b. Disputed issues: Plaintiffs' version

1. Whether Defendants violated the 42 U.S.C. section 12132 (hereinafter "ADA") by failing to reasonably provide accommodations to Ms. Sheehan that would have eliminated any risk Ms. Sheehan posed.

2. Whether the "direct threat" exception to the ADA applies in circumstances under which it was reasonable for defendants to provide accommodations that were designed to negate or eliminate the risk posed by Ms. Sheehan due to her disability, under 28 C.F.R. section 35.104.

3. Whether Ms. Sheehan factually posed a significant direct threat to the health or safety of others, under 28 C.F.R. sections 35.139; 35.104; 35.130, after she closed the door on the defendants and prior to the defendants forcing the door back open.

4. Whether Defendants' individual judgments, if they were made, and even if they were made in good faith, that providing reasonable accommodations to Ms. Sheehan would not have eliminated a significant risk, were objectively reasonable without deferring to their individual judgments.[1]

5. Whether Defendants conduct leading to the shooting of Ms. Sheehan was reasonable.

6. Whether Defendants' unreasonable conduct leading to the shooting of Ms. Sheehan proximately caused the shooting and Ms. Sheehan's damages.

### 3. Updating disclosures and discovery

The parties agree that because more than four years have passed since the closure of discovery, good cause exists under Rule 16(b)(4) to modify the scheduling order to require the parties to update their disclosures and conduct discovery related to any developments following the closure of discovery. The parties expect these updates to relate primarily to Ms. Sheehan's physical and mental health. For example, additional medical and mental health records for Ms. Sheehan will need to be obtained by subpoena; it is possible that depositions of treaters may need to be taken. In addition, experts who have given opinions about Ms. Sheehan's physical and mental health will need to supplement their reports based on this additional information. The parties' proposed deadlines are at the end of this joint case management statement.

### 4. Dispute regarding designation of additional expert

San Francisco contends that good cause exists under Rule 16(b)(4) to modify the case scheduling order to permit San Francisco to disclose an additional expert, specifically an expert that will address issues related to Plaintiff's ADA reasonable accommodation claim and Plaintiff's state law claim that officers should have used different tactics in approaching Plaintiff. Plaintiff disagrees on the basis that both the ADA claim and the negligence claim were extant at the time discovery was conducted in this case, and Defendant's retained police practice expert Don Cameron has already

---

[1] Notably, there is no evidence that any such judgment were made by defendants. In fact, the converse appears to be the case: Defendant Reynolds admitted in deposition she was not thinking about Ms. Sheehan's disability when she ordered Defendant Holder to force the door back open.

offered his opinions in these areas, just as Plaintiff's retained police practice expert, Lou Reiter, has done.

### a. Defendants' position

Rule 16(b)(4) provides that a scheduling order may be modified for "good cause." This standard applies to a party's request to modify the scheduling order to permit designation of an additional expert. Here, good cause exists to permit San Francisco to designate an additional expert to address Plaintiff's ADA reasonable accommodation claim and Plaintiff's California law claim that officers should have used different tactics when they decided to re-open Plaintiff's door after she attacked them with a knife, and take her into custody. Good cause exists to permit this expert designation exists for two reasons: (1) Plaintiff's Complaint did not give fair notice of her "reasonable accommodations" claim, such that Defendants had notice of the need to designate an expert in this area; and (2) a change in ADA and California law during the pendency of the appeals.

*First*, Plaintiff's Complaint never gave San Francisco fair notice of her ADA reasonable accommodations claim, under Rule 8(a) of the Federal Rules of Civil Procedure. To provide fair notice under Rule 8(a), a complaint accusing a defendant of failure to provide reasonable accommodations under the ADA must state what reasonable accommodations are or were demanded. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) ("The Plaintiff merely makes conclusory allegations that the Defendant refused to accommodate her. She fails to state exactly when she requested and was denied an accommodation, and more importantly, she fails to state exactly what accommodations she requested. Without such allegations in the Complaint, the Defendant cannot possibly attempt to formulate a defense, which might very well include reasonable, non-discriminatory explanations for the Defendant's alleged denial of the requested accommodations."). Because a plaintiff "bears the burden of establishing an ADA violation, she must establish the existence of specific reasonable accommodations that [the defendant] failed to provide." *Memmer v. Marin Cnty. Courts*, 169 F.3d 630, 633 (9th Cir. 1999). Here, Plaintiff's Complaint fell far short of providing fair notice of what specific reasonable accommodations San Francisco should have provided. Indeed, Plaintiff's Complaint does not even demand reasonable accommodations, let alone specify what accommodations San Francisco should have provided. Doc. 1 at 15-16. Rather, Plaintiff's Complaint

simply accuses San Francisco of discriminating against her and denying access to programs. *Id.* This did not give fair notice to San Francisco of Plaintiff's reasonable accommodations claim. *See Sindram v. Merriwether*, 506 F. Supp. 2d 7, 12 (D.D.C. 2007) ("All the plaintiff does is make vague assertions of the need for accommodations without specifying what accommodations he needs, were requested, and were denied. And, this is insufficient to allege an ADA violation."). Plaintiff never sought leave to amend her Complaint to add a reasonable accommodations claim. Thus, as of the deadline to designate experts – December 19, 2010, *see* Doc. 23 at 4 – Defendants did not have notice of a "reasonable accommodations" claim – either that Plaintiff was making such a claim, or what specific reasonable accommodations were demanded. Indeed, the first time Plaintiff asserted a claim for "accommodations" was in opposition to Defendants' summary judgment motion, filed on February 4, 2011 – and even Plaintiff conceded that her ADA claim, as pled in the Complaint, "created confusion" in a number of ways. Doc. 42 at 18-19 & n.2.[2] Clarity came only when the case reached the Ninth Circuit, when Plaintiff argued that the Fourth Amendment and tactical criticisms of her police practices expert – which Plaintiff, her Complaint, and her expert had never styled as "reasonable accommodations"[3] – were proposals for "reasonable accommodations" under the ADA.[4]

The lack of notice regarding an ADA "reasonable accommodations" claim was significant here. An expert is not needed to defend against a claim of animus toward the disabled or a simple

---

[2] Below, Plaintiff contends that Defendants must have been on notice of a reasonable accommodations claim because the phrase "reasonable accommodations" appears in their summary judgment motion. But that phrase appeared when Defendants described a holding of a case that Defendants cited to support their broader argument: that an armed and violent arrestee cannot make a cognizable ADA claim for *denial of access to programs* or *discrimination* when police use force in response. Doc. 38 at 23. Those, of course, were the ADA claims made in Plaintiff's Complaint. *Id.* (citing Complaint, Doc. 01).

[3] None of Plaintiff's expert disclosures purported to address an ADA "reasonable accommodations" claim. Mr. Reiter's declaration (Doc. 43-7), referenced below by Plaintiff, never did so. And even supposing that Plaintiff or her police practices expert had identified the expert's tactical criticisms as proposed ADA Title II "reasonable accommodations," that would not have provided fair notice to San Francisco. In the related context of ADA claims regarding architectural barriers, the Ninth Circuit has stated that disclosure of the specific demand in an expert report does not provide fair notice: "In general, only disclosures of barriers in a properly pleaded complaint can provide such notice; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011).

[4] In the words of the Ninth Circuit, Plaintiff proposed that "the officers should have respected her comfort zone, engaged in non-threatening communications and used the passage of time to defuse the situation rather than precipitating a deadly confrontation." Doc. 70 at 41.

denial of access to programs – the basis for Plaintiff's ADA claim in the Complaint. But when a reasonable accommodations claim is made, and a specific accommodation proposed, the need for an expert becomes clear. In such cases, expert testimony can assist the trier of fact in assessing the reasonableness of a proposed accommodation and the likelihood that the proposed accommodation will overcome the barrier posed by a disability. *See, e.g.*, *Enyart v. National Conference of Bar Examiners, Inc.*, 823 F. Supp. 2d 995, 1001-1009 (N.D. Cal. 2011) (admitting expert testimony concerning reasonable accommodations claim). Likewise, the Supreme Court has observed that in cases involving whether accommodations will ameliorate safety risks, expert testimony is relevant. *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998).

Under circumstances like this – where the opposing party has clarified its theory of the case after expert disclosures, thereby making clear the need for the other side to oppose that theory – courts have found good cause to permit amendment of the scheduling order to name an additional expert. *See, e.g., Peshlakai v. Ruiz*, No. CIV 13-0752 JB/ACT, 2013 WL 6503604, at *14 (D.N.M. Nov. 20, 2013). Below, Plaintiff asserts that Defendants' police practices expert Mr. Cameron can address these issues. But while Mr. Cameron is an expert in general police tactics, his opinions did not focus on the effectiveness of proposed accommodations or the many other factual matters that are relevant to an ADA reasonable accommodations claim. Had Plaintiff provided Defendants with proper notice of her legal claim, Defendants would have designated an expert to address the factual issues that are relevant under ADA reasonable accommodations law. Plaintiff's failure to give that notice denied Defendants their right to designate the best and most appropriate expert they could to defend against that claim. It is fundamentally unfair to permit Plaintiff to pursue a claim never pled in the Complaint, without permitting Defendants a full opportunity to present evidence to defend against that unpled claim at trial.[5]

---

[5] Below, Plaintiff faults Defendants for not arguing in their summary judgment reply brief that Plaintiff failed to give notice in the Complaint of a reasonable accommodations claim. But Defendants' choice of what arguments to make in a summary judgment reply brief is not a sign of whether Defendants had notice of the claim. There are good reasons not to raise a pleading defect in a summary judgment reply brief. That is a procedural defense that – even if successful before a district court – is susceptible to reversal on appeal on a finding that leave to amend should have been granted.

*Second*, good cause exists to permit defendants to designate an additional expert because of a change in the law during the appeal. A change in law has been recognized as "good cause" to modify a scheduling order under Rule 16(b)(4). *See, e.g.*, *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001). And the law has changed in two ways while this case was on appeal. First, the ADA law changed in this appeal, where the Ninth Circuit recognized a type of ADA claim against arresting police officers that it had never recognized before (and which Plaintiff had not even pled). Second, the California law applicable to Plaintiff's negligence claim changed during the appeal. Specifically, in *Hayes v. County of San Diego*, 57 Cal.4th 622, 305 P.2d 252 (2013), the California Supreme Court held that the determination whether an officer negligently breached a duty not to use unreasonable force includes consideration of "preshooting conduct" as part of the totality of the circumstances – thus disapproving a California Court of Appeal decision which stated that only the facts before an officer at the moment of the shooting are relevant, a standard closer to the traditional Fourth Amendment standard. *Id.* at 261-262 (disapproving *Munoz v. City of Union City*, 120 Cal.App.4th 1077 (2004)). Therefore, the officers' decisions leading up to their decision to shoot at Ms. Sheehan are now part of the state law negligence analysis. These changes in ADA law and California law have a similar effect: they involve consideration of the officers' decision to persist in arresting Ms. Sheehan. Thus, this change in law supports permitting San Francisco to add an expert.

The most significant factor in the "good cause" analysis is diligence. San Francisco was as diligent as it could be. Here, Plaintiff never gave notice to San Francisco that she was making a "reasonable accommodations" claim in the Complaint. That claim became apparent only when Plaintiff opposed summary judgment, when even Plaintiff conceded the Complaint's ADA claim "created confusion." And the specific accommodations sought by Plaintiff became clear only on appeal. Meanwhile, on appeal the law changed. San Francisco is showing diligence by making this request for modification promptly upon return to the District Court. No prejudice or delay will be caused by this additional expert designation: no trial date has been set, and the parties must update their discovery regardless. San Francisco requests that it make Rule 26 disclosures of this additional expert on January 20, 2016, the same date proposed for the parties' other supplemental expert disclosures.

### b. Plaintiff's position

Without getting into extensive briefing in this Case Management Conference statement, Plaintiff's Complaint clearly gave notice of the ADA claim and that a failure to accommodate Ms. Sheehan's known disability was the gravamen of the claim (e.g. Plaintiff's Fourth Cause of Action, paragraphs 55-58 of Plaintiff's Complaint, Doc. 1); and if that was not clear enough in the Complaint, it certainly was clear by the time discovery was completed. Defendants had the opportunity to declare rebuttal experts to Lou Reiter's opinions (filed with the Court as Exhibit H to Nisenbaum Dec. ISO Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Doc. 43), but chose not to do so.

Defendants own police practice expert opined repeatedly that the Defendants' tactics preceding the shooting were sound and it would be unsound to do anything differently. Defendants could have argued the "accommodation" issue they now protest in their Motion for Summary Judgment, but chose to only argue that the ADA does not apply at all. Plaintiffs in their opposition clearly argued that the ADA claim was based on "…accommodations protections provided by the ADA…" in their Opposition to Defendants' Motion for Summary Judgment (doc. 42 at footnote 2), but nowhere in Defendants reply brief do they argue a lack of notice of this issue. Indeed defendants specifically argued the "accommodations" issue in both their moving dispositive papers (doc. 41, at page 22, lines 10-16) against the requirement of police officers to provide "reasonable accommodations" under the ADA to a subject prior to the completion of arrest (Defendants' own quotes in their document), and in their reply brief (doc. 47, at page 13, lines 7-15):

"As to the second argument, that the ADA does not impose a duty to accommodate the disability of a violent mentally ill suspect at least until *after* the suspect is brought under control, Sheehan appears to assert that these Officers lacked appropriate subjective concern about accommodating Sheehan's disability while Sheehan was trying to kill them. (Plf. Br. 19:1-6.)".

No rational reader of Plaintiff's Complaint could not be on notice that Plaintiff 's ADA contentions were that the Defendants failed to consider her disability and failed to act in a manner that considered her disability. It was so clear that Defendants argued the substantive issue in their dispositive papers without ever claiming a lack of notice on the issue.

It was likely for this reason that both Plaintiff's police practice expert and Defendants' police practice expert offered opinions on the tactical conduct of the Defendants leading to the shooting. Indeed, Defendants' expert cited specifically to POST L.D. 37, chapter 4, Mental Illness, and contended that the actions officers take in responding to a person exhibiting signs of mental illness "only apply to static situations that are controlled and the individual is contained and not for dynamic and fluid situations when someone is assaulting an officer with a knife." As noted herein, Mr. Cameron opined that tactical decisions the Defendants made was sound, and it would have been unsound to do anything differently. It appears Defendants want to bolster Mr. Cameron's opinions by adding a second expert in the same subject areas already addressed by Mr. Cameron.

**5.    Summary judgment**

Defendants will make another motion for summary judgment as to the state law claims in the case, because when the Ninth Circuit ruled that Cal. Welfare & Institutions Code section 5278 immunity did not apply, it remanded to the district court to consider Defendants' alternative arguments for nonliability on the state law claims. Doc. 70 at 44. Plaintiffs contend that while the 9th Circuit remanded the case, and this Court has the authority to allow another motion for summary judgment (and conversely, to not allow: see this Court's Standing Order, limiting each party to filing only one motion for summary judgment absent a showing of good cause), the *Hayes* negligence claims regarding conduct leading to the shooting are clear-cut jury fact reasonableness issues. As framed by the 9th Circuit, the state law immunity (California Welfare and Institutions Code section 5278) does not apply if Defendants were negligent in executing the detention of Ms. Sheehan, which is the basis of Plaintiff's negligence contentions, and has already been addressed by both sides police practice expert witnesses. The parties disagree, however, whether the Ninth Circuit's opinion precludes San Francisco from making another motion for summary judgment as to the Americans with Disabilities Act claim. The parties intend to brief that dispute as part of their summary judgment briefing. At this time, there is no need for the Court to address this dispute about the proper scope of the summary judgment motion.

**6.     Alternative Dispute Resolution.**

The parties previously engaged in mediation with a court-appointed mediator. Mediation was unsuccessful. The parties request reference to a Magistrate Judge for a settlement conference to occur by the end of February 2016.

**7.     Trial**

The parties request a trial date of June 20, 2016, with the final pretrial conference scheduled in the first two weeks of May 2016.

///

### 8. Proposed Scheduling Order.

The parties propose the following scheduling order:

| Matter | Date |
| --- | --- |
| Supplement Rule 26(a)(1)(A) fact disclosures, limited to matters that have developed since previous fact discovery | October 1, 2015 |
| Deadline for additional fact discovery, limited to matters that have developed since previous fact discovery | December 1, 2015 |
| Supplement Rule 26(b)(2) expert disclosures, limited to matters that have developed since previous expert discovery* (*the parties dispute whether Defendants should also be permitted to designate an additional expert at this time – see no. 4 above) | January 20, 2016 |
| Deadline for any additional expert depositions based on supplemental Rule 26(b)(2) expert disclosures | February 12, 2016 |
| Last date to hear motion for summary judgment | March 25, 2016 |
| Final pretrial conference | TBD |
| Trial | June 20, 2016 |

Respectfully submitted,

Dated:  August 21, 2015

DENNIS J. HERRERA
City Attorney
CHERYL ADAMS
Chief Trial Deputy
PETER J. KEITH
Deputy City Attorney

By: */s/ Peter J. Keith*
PETER J. KEITH

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

Dated:  August 21, 2015

THE LAW OFFICES OF JOHN L. BURRIS

By: */s/ Benjamin Nisenbaum*
Benjamin Nisenbaum

Attorney for Plaintiff
TERESA SHEEHAN